Ring v. Boca Ciega Yacht Club If I said that wrong, please tell me. Ms. LeHart. Good morning, Marcy LeHart. On behalf of the appellant, Samantha Ring, I'd like to address the questions posed by the court in its April 29th memorandum, the first of which are whether Boca Ciega Yacht Club is self-governed and member-owned. The answer to that is that it is self-governed, that the general membership elects officers that oversee the club's day-to-day activities. However, the organization— There's no question it's a club. The real question is whether it's a private club. Isn't that right? That is correct, Your Honor. And one of the factors that you consider is whether the club is member-owned or not. And this club is not member-owned. Let me tell you where I'm coming from in those questions that were entered to issue to you, okay? Both sides in this case seem to think that the way to resolve that private club issue is to employ some kind of multifactor balancing test, okay? There is nothing to it for which I am more repelled, more loathed to do, than to adopt as circuit precedent a multifactor balancing test to determine the meaning of a private club, okay? You know, both sides seem to think that that's the right way to approach this. I'm just telling you that's not the way I think we should approach it. I can only speak for myself today, okay? But to me, we've got to figure out what the meaning of private club is. We've got Supreme Court precedent well before the Americans with Disabilities Act was ever passed, where the Supreme Court had told us something about the meaning of private club. And I want us to adopt a meaning consistent with that precedent, consistent with the ordinary meaning of the term private club, that district courts can apply that don't end up being a multifactor balancing test that then allows district courts to just do whatever they want. Do you see where I'm coming from? I see exactly where you're coming from, Your Honor. So it seems to me those questions that were posed to you earlier are getting at two different issues. The first is, is it a club? That's what the first set of those questions is about. And you agree, yeah, it's a club. Absolutely. But the second part, the Supreme Court said that the organization must ensure seclusion from others in critical aspects of the relationships between its members. And to me, when the Supreme Court says that, that goes to the heart of whether it's a private club. Understood. And what I would like to know is, is it a private club? And do we know enough from the undisputed facts here? We've got some facts. Both sides move for summary judgment here. And there are some undisputed facts. But despite the fact that both sides move for summary judgment, there's a lot of disagreement in this record, too. That's true, Your Honor. And what matters to me is, do some of the disagreements bear on this question, whether the organization ensures seclusion from others in critical aspects of the relationships between its members? Or do we know enough from the undisputed facts that we can resolve that question and say, in your judgment, it's not a private club? Or in your adversary's position, that it is a private club? Your Honor, I think, based on the record below, that there are sufficient undisputed facts that you can resolve the issue of whether or not Boca Ciega Yacht Club is a private club. For example, the simple mission statement of the organization includes that one of its missions is to be an integral part of the Gulfport community. Being an integral part of the community is inopposite with secluding your members. I think that the Boca Ciega Yacht Club is very similar to the JCs in the United States Supreme Court case of Roberts v. USJCs, where the court said that central to the organization's activities and missions is interacting with other people. Central to Boca Ciega Yacht Club's mission is boating safety and promoting instruction and education and safe boating. Here are some undisputed facts that seem to me important. The club offers adult sailing school to members of the public in the spring and fall on a limited space available basis, right? That's correct. Twice a year. And that enrollment in the school includes a 90-day limited membership in the club. That's correct. And it entitles school participants to access the clubhouse. Correct. The club holds events that non-members are welcome to attend. Isn't that right? Frequently. Anyone in the clubhouse at these events, the club says, is a guest. But it makes no suggestion. The club makes no suggestion that the events are invitation only or strangers don't show up and enjoy themselves as putative guests of the club. You're correct, Your Honor. In fact, in the record is a reference in one of the newsletters to a person showing up at a club event to find out more about the club and then ending up staying for the evening. The membership newsletters are posted on the website available to the public, right? Correct, Your Honor. And member contact information, phone numbers, email addresses are often on that, right? I think since the initiation of this litigation, that's no longer true. But at the time the lawsuit was filed, that was correct. Well, that's what matters is when the lawsuit was filed, right? Yes. The frequency of events disputed? The frequency of events is disputed. According to Boca Ciega Yacht Club, the only event that's open to the public is their annual fun day. The governance meetings of the clubs are open to the public, right? I don't believe they are, no. Oh, I thought that if you read the minutes, you have questions about are there any visitors here today? So please, please, please, you know, raise your hand and identify yourself. That suggests to me that it is open to the public. I can certainly understand where you get that interpretation. The issue of whether the other, as I understand it, there's some calendar which suggests that there was nine events during the course of a year, nine, quote unquote, non or public oriented events. And that those were specific. In other words, it's not that the whole public was there, it was for a school's band or a school fundraiser, or it was for a specific event. Correct. But they were non-members that many of those organizations had no nexus to sailing whatsoever. Right. OK. All right. Is there anything else I would need to know from the record about whether it's a private club? Well, I would point out that there are affidavits in the record from non-members who said that they have been to the Boca Ciega Yacht Club many times. One said she's been there a hundred times. She's never been asked for I.D. She's never been told to sign in. She's had free access to all of the club facilities. Her affidavit is not the only affidavit. I can point you to one. What do you make of the issue that when someone is admitted to membership, they're given a key to the clubhouse? Does that indicate to you that there is some intent for seclusion? Well, there's evidence in the record that shows that awarding that giving someone the key is largely symbolic that the gate was frequently open over the last decade or more that Miss Ring was a member. Before all your time expires, we're probably going to have to go over with your time. Let me ask you some questions about how let's say I think the district court was right about retaliation. What if if the club was entitled to terminate your client's membership? Yes. OK, let's assume that for us for a second. What does it matter? Is your discrimination claim now moot? Discrimination claim is not moot. We've asked for injunctive relief on behalf of not just Miss Ring, but on behalf of if they're entitled to basically kick your client out of the club. Yes. What would that injunctive relief be for? It would be an injunction saying that persons with service animals, persons with disabilities that rely on service animals may not be excluded from the clubhouse. If your club if your client is no longer a member of the club, she has no right to go there. It's not that she's being excluded because she has a service animal. It'll be because because she's no longer a member of the club. That's correct. But Boca Ciega Yacht Club maintains that they're a private club and they can exclude people with disabilities if they want to. Your client can't sue on behalf of anyone else. She can only sue on behalf of herself. That's right, Your Honor. But my my client belongs to organizations, for example, the Tampa Bay Women's Sailing Association that meets at Boca Ciega Yacht Club's clubhouse. And she would like to be able to attend those meetings. She would like to attend the Gulfport Historical Society meetings that take place at the Boca Ciega Yacht Club. She owns a historical home. So even not being a member of the club anymore, there are still events held at the facility that she would like to attend and she would like to be accompanied by her service animal. OK, Judge Marks, I think, had a question. I want to move to the state law issue. But but if Judge Marks has a question. Well, I had a question about the scope of the requested injunction. Would it be specific to her? I just I'm concerned about a, quote, follow the law injunction, which is not appropriate. So would we have a specific injunction as to your client specifically? Because if we find that this is not a private club, we don't really need to issue a follow the ADA injunction. That would be implicit, correct? That's correct. If you find that it's a private club, then it's a given. They may not exclude persons based on their disability or based on other classes, such as. Your point is your clients, your clients claim for discrimination would still be alive because she could seek an injunction, an injunction that allows her the right to attend those meetings of organizations to which she belongs or held there at the club with a service animal, even if she could otherwise be excluded from the club. That's exactly correct, Your Honor. If she's been discriminated against, she is entitled to injunctive relief and to attorney's fees. OK, let's let's turn to quickly the issue of state law. Do you agree with me that that that that that that's an unsettled question that perhaps we should certify to the Supreme Court of Florida? I respectfully disagree with that, Your Honor. I think the Florida Supreme Court addressed that issue in the case of Delva versus Continental Group Inc. That's at 137 Southern 3rd 371. In that case, the Florida Supreme Court found that it was not necessary for the Florida legislature to amend the state law after Congress amended the federal law in order for the state law to be implemented. The federal law to provide the information to the state law. So so basically, the Supreme Court of Florida has said that if Congress amends the federal law, even though the Florida legislature hasn't, we should we the Florida courts will interpret the statute as necessarily including the later federal amendment. They have said that in regards to the Florida Civil Rights Act. Yes, specifically because the Florida Civil Rights Act is patterned after the federal Civil Rights Act and after the federal ADA and in making its decision in the Delva versus Continental Group case, something that was meaningful to the court was that the the case had to do with whether pregnancy discrimination was included under the prohibition against discriminating based upon sex. Have they ever done that with respect to disability discrimination. I'm sorry. Have they ever said that with respect to disability discrimination. No, Your Honor, but they're considering the same part of the statute, the, the tell you what, you know, it may be, it may be crazy but it seems to me that this is a new state Supreme Court, maybe they ought to be the first to pass on that. Maybe it's a new stream new state court, but they are bound by precedent. Well, last time I checked state Supreme Court overruled around. Well, let me ask you this Council. Yes. The question for us is whether there's substantial question of state law, in order to refer a certified question right that's standard. Yes. Do you know what the DC is have uniformly said, since the 2008 amendments regarding conformity and construing the Florida Civil Rights Act with the ADA. Well, Your Honor, there was a split of authorities on that. And that's the case that I'm talking about that was decided on the Supreme Court, the fourth district regarding the ADA, not not the other provisions but specifically regarding the ADA post 2008 amendments. The court has not considered the 2008 amendments, but I think based on the Delva versus continental case, it would decide the same way, I did a quick search and I found three separate DC is that have all reiterated since the 2008 amendments that Florida's law is to be construed and conformity with the ADA. I found one from the fourth DCA from the first DCA and I think either the including amendments to the law, it doesn't say amendments but it's post 2008. It's post 2008. But it doesn't make clear that they would necessarily adopt amendment federal amendments to the law that where the Florida legislature has an amendment. Your Honor, the legislature has had 13 years to modify the definition of handicap and reject the 2008 amendments if it shows. That's, that's a, that's a wild way of looking at what the legislature is supposed to do. So, the legislature is supposed to come in and affirmably say that this law that we've never amended, you should, we're going to amend to make clear that you shouldn't construe it as being affected by a federal amendment. Your Honor, the judge luck just pointed out the cases have consistently said that the federal law guides implementation of the state law, and there has been no clarification to that to say, but, but we don't mean what happened in 2008. Okay. Okay. Um, um, let's let's hear, we can go on several minutes over you guys still save your time for rebuttal let's let's hear from Mr. Thank you. Please the court. Good morning, Mark Tinker and Elizabeth pontoon on behalf of focus your club. Like to start with, at the beginning where this court started with the private club factors and I know you said you didn't see my point, you know, there's no question here this club. Is it a private club, and this you know the Supreme Court dealt with this kind of problem and following the passage of the Civil Rights Act. There were lots of entities that started calling themselves private clubs and, and, and the Supreme Court wanted to make sure that that was not just a sham. Right. And when Congress said look private club is a legitimate thing that that the Civil Rights Act is not intended to reach it raises important questions about freedom of association. But, but, but the Supreme Court looked at whether it's truly a member organization notice be here this is a member organization, but does it really. Make efforts to ensure seclusion from others. And when I look at this record and what the undisputed facts are. This looks awfully public to me. Your Honor, they're obviously there are the issues with, of course, the grounds are gated and locked and only members have keys. I know there was the record indicates though that that's not really the case that the keys and the, and the gates are just not operable or it does nothing to bar anyone from entry. Well, I'm going to, I'm going to move on from that a little bit but just address I don't necessarily agree with that the record is that only members have keys keys are different than what the record shows as far as the record does show that it's not always locked right. The, the issue with the access is the front gate, they to the parking lot has a keypad on it's a four digit code keypad, and that keypad code, unfortunately hasn't changed in a while so that is where the issue is arisen where people who are no longer members or people who were previously members maybe gave out the code where people have gotten access to that keypad, that shouldn't have. But what the record shows is that only members have keys and you need the keys to access I mean if we back up this is a sailing club a yacht club, you have to have a key to get on the docks to access the boat slips a beach is that the beach, the beach is accessible by lots of other clubs. In fact, that's part of the lease right that's part of the lease correct. So at least some of the property is accessible to a very large segment of the Gulfport community parts are by the lease and also by the lease, the lease directly says that the club itself is not to be used by any non members whatsoever it's prohibited strictly prohibited. So the lease does divide up a little bit of the property to allow beach access to the lions or, you know, certain groups. But there, the actual club itself written right into the lease is there, the club, the focus in the yacht club is prohibited from allowing public access to the club itself, or any use of the club itself without membership, being there. And these there's reference to these events that have taken place, a member has to be there sponsoring it these are not open events. The problem is though if the standard is as as Chief Judge prior has explained, which is that excluding oneself or secluding oneself from others. The fact that you're allowed to bring guests, the fact that guests are allowed anytime you want but that people have to be there doesn't really indicate any sort of exclusion or seclusion from others does it. It does to the extent that a non member can't just walk in and access those docs and tie up their boat. There's kind of evidence that they can right isn't that what the affidavits. No, they the affidavits stated that at times people have been able to access the property itself, not to access the docs again you'd have to have a key. Isn't that part of the property. And while we're on that subject, I thought the key code issue wasn't the parking lot that was accessible. I thought the key code that that Judge Marx is referring to was the key code to the docs that was well known by everybody in Gulfport. No, Your Honor. No, Your Honor. The docs themselves are key only and actually there are separate docs, there's a doc a that is a member doc that is exclusively does not even connect to any other docs their docs BC and D if you're on one of them you can get to the other ones, but those are key coded also but the doc a is strictly member access, and it has a key that there's no other way to get on it to the, you know, has a big gates you can't get around it. If the issue though is privacy and privacy is defined by seclusion from others on a summary judgment standard where we're to view the evidence in the light most favorable to the plaintiff here. How then can we not add up all of the things that judge prior and your opposing counsel talked about the fact that there's a school, which is pretty much open everyone and which gives membership for a limited period of time. The fact that there are at least nine events for which significant members of the public are there that others get to use the beach that others seem to have access to at least some of the property there. How do then on a summary judgment standard can we not say, yeah, there's at least an issue of fact regarding the seclusion element to me and I'm going to add one thing because to me and this is I think the biggest issue as far as this being a requires work days their Saturday work days, one day a month, they're expected to show up and work on the docks and provide what she called sweat equity. That's it. I'm sure that's enough to ensure exclusion from others which is a separate question, but I think it establishes a lot as far as the privacy of the club your honor because it doesn't really doesn't. It doesn't tell me that you're really trying to seclude your organization from the outside world. There's all these other things. I mean, that maybe goes to the fact that it really is a membership organization that it really that that's almost like a form of dues that the members are expected to contribute. Not just money but sweat equity, but that doesn't really tell me that you're excluding the club from others but judge let's question really raises a different one for me, which is one of my many frustrations about this appeal. So, both sides move for summary judgment. But as I read the law in this area. The question of whether this is a private club is a question of law. Right. And that was actually stipulated as well. Yeah. And so, one way to have resolved this is to put a record before the district court and have the district court, make that determination, the district court can actually look at the facts and make the determination as a matter of law. Is this a club or not. And I looked at this and, you know, it looks like the precedents are pretty clear that that's a question of law, even though it looks very fact to me, looks like the sort of thing that perhaps ought to be submitted to a jury, but but I don't think that's the law. Do you agree with me that the district court, to the extent there is a dispute of that there. There's a swearing contest as to certain facts the district court makes that determination for purposes of determining whether it's a private club or not. I agree, Your Honor. I believe it's a question of law and that's exactly what Judge Covington did here. So submitting this on summary judgment is is is odd in and of itself. Why not just have the district court make the findings of fact that support that determination and resolve whatever factual issues there might be. That didn't happen here. But it seems to me it could be one. You know, Your Honor, I don't believe that there are any. It's a situation where there are direct clashes in facts there are disputing facts as far as people have facts supporting their claim and then facts opposing their claim, but there's no he said she said direct disputes where people one person's calling another person a liar and there's a credibility determination that needs to be made at a hearing an evidentiary hearing there. This is I believe that what you're saying what you're telling me is that everything, everything the plaintiff said in an affidavit. For example, is it you accept is true. What that's Judge Covington did accept them as true, and she said, for example, the affidavits that people had come on to the property at certain times she said, I see that but certain isolated. I know the council, the council, the council, is there a factual dispute on the record because I guess I think I see this a little differently than, than the chief explained it, which is that while the court does make the ultimate determination of law. This is, if there is a dispute of the subsidiary fact, at least on summary judgment I agree this was a bench trial, the court would decide that but at least on summary judgment that subsidiary dispute of fact has to be viewed in the light most favorable to the non moving party. And so Judge Pryor's question is, and it's right. Do you, is there a fact a subsidiary fact that goes in to this legal determination that isn't dispute, and if it is, we have to view it in the light most favorable to the plaintiff I would think. And I would agree with that last part, there is, I don't believe that there is a direct dispute, as I said, there's no he said she said issues. And I do believe that judge Covington seem to discount the affidavits of the three. She didn't. I'm sorry. Discount them to the extent she said I don't believe that she discounted them to say if those are accepted as true it's not enough. And that's a big difference, of course, part of the problem here is I think that judge Covington was doing what both of you would have us do and that is she was using a multi factor balancing test, which I view as an error of law that I'm only speaking for myself about that. The Supreme Court precedent that that was, you know, referred to in the questions that were presented to you for away. To me, or the kind that they supply the real definition of what it takes for there to be a private club and and judge Covington really didn't look at it that way, and I'm not sure whether she would have necessarily discounted some things versus others. In making her determination had she been using a proper understanding of what a private club is and had your arguments from both sides, then focused on that inquiry. I think your honor the way, and I mean, I think that the test, primarily if you look at Roberts versus JC says you know what Robert says that you have family relationships on one end of the spectrum employees on the other end, and everything else is somewhere in the middle, and the judges task is to find where in that continuum, this case lies as a closer to family as a closer to employee, and some courts have laid out factors to try and help them do that. Others I mean I suppose you could say treat it like pornography you know when you see it. I mean, I'm just, I'm not going to be no council, it'll be over my consent. Council, it's a term that's definable, it is language that has meaning. And so the question is, does it fall within that language or not. And I, I'm in complete agreement with the chief on that but chief if you wouldn't mind, I'd like to get to the retaliation claim because I'm concerned that there's, there's evidence in the plaintiff's favor on the issue of pretext. Now as I understand what happened at the time that she was terminated in other words when they gave her reasons for why she was terminated. Two of those reasons were that one that she undermined the club's mission by sending damaging damaging emails to the city, and that she further jeopardize the club's relationship with the landlord. As I understand it, the only emails that she sends. And the only thing that damaged her relationship was her complaints about the lack of accommodation on a summary judgment viewed in light most favorable to the plaintiff. How do we not have an inference from that that the damaging emails that she sent, and the damaging of the relationship which was the cause of her termination were those things that that that were her complaints that she was making the Gulfport that put the the club in trouble. Your Honor, well the damaging the so called damaging emails to the city just coming to and found that those were waived, they were not raised they were not part of the pleadings they were not raised anywhere in the case until the motion for summary judgment, and she expressly said I, that's just too late to bring those up and there's a big difference. But how women, how is bringing up summary judgment evidence that's not a pleading issue that this is the so as I understand it, there was, there's the McDonald Douglas framework that you that you guys agree to. There's a stipulation or at least an assumption that she met a prima facie case, there were legitimate reasons put on and then it's the burden of the plaintiff to present evidence in McDonald Douglas that rebuts the presumption of that these were legitimate business reasons, she points to the very reasons that that that that were presented forward this was the club's reasons for doing so and what the club said in its order of termination and it's minutes was that that she was undermined by sending damaging emails, and that she jeopardize the relationship, the contents of the emails are not relevant what I'm talking about here is the inference from that statement for why she was terminated. Cannot we make a reasonable determination that it was because of her complaints, which are part of the record, and we're part of a retaliation. Well, Your Honor, the, those were part of the reasons and the reasons I believe it was a one of them. You're going to miss my notes now I think it was a 23 page bill of particulars that went through, one of which was that she had been living aboard her in violation of the club rules which does not seem to me to be in dispute at all. Correct. And there was years living aboard which is not only a violation of rules it's a violation of the lease with the city that could jeopardize the club's lease. And she had been doing that for she had been doing that for several years isn't that correct. Not know about it. She originally started. She was allowed to live aboard when she was having a domestic issue is what's the record says that she was allowed to live there and then was told okay it's been, it's too long you need to get off the boat. She said that she was and then there was another issue where she was written up against she was found to be on there. She said she wasn't on the boat she was giving land based addresses that eventually were determined to be false, four of them. All four of them are false. So there was back and forth as far as yes she was originally allowed to be there as a courtesy situation temporarily overstayed her welcome was told to leave this went on for a while totally multiple times actually put up for twice before. For that reason, and under the ADA. The plaintiff has to prove but for causation, isn't that correct versus motivating factor. Yes. And you know that's, I think that undermines the question really is, did she provide evidence of pretext for every non discriminatory reason that was put forward and I guess the question comes back to judge Lux question which is, did you, in essence, admit that that a reason for terminating her was retaliatory, and we can infer from that, that that's the real reason here. Well, your honor if the reasons that predated any of this the liver board reasons and the being put up twice for expulsion before predated any of her complaints to the city which were in retaliation for the boat. Here's the problem that you say there's a how many page list of particulars. And if, and if one or two of them are looking at, you know, looking at and the light most favorable to her retaliatory wouldn't a jury be able to infer that those are the real reasons, and not the others. I think that that would be it. It's and it's not that it's a fact question if she was put up for expulsion before sending any of those emails to the city before any of this occurred for living aboard the boat and was eventually expelled for living aboard her boat and providing false addresses and stealing electricity from the city, you know, those predated any of these complaints, so that's that's not they can't. What's your position on the state law question. The state law I think, well there's three things I think. First of all, I don't believe that the Supreme Court would take jurisdiction over it because the issue has to be dispositive of the case, it would. So even if it's just dispositive of that claim that wouldn't satisfy. No, I don't believe so it has to dispose of the matter. Okay. It has to be and I'll read it from Florida rule 9.030 that would mean they could never take it. It says a determinative of the cause of action. Okay, well the cause of action can be claimed specific. And the claim, I don't think I'm saying I don't believe it'd be determinative of this claim of this cause of action, because if it focuses out club is a private club then there's nothing it's a move, it's asking for an advisory opinion at that point it would be a move point. So, it wouldn't be determinative of that cause of action, let's say, let's say we conclude it's not. I think, as far as if we're still focusing on the question of should you certify a question. I don't, I believe, and I think Judge luck, you mentioned this that following the amendments to the act that there have been three cases I believe I found the same ones there's just so and Smith and another one from the first district. They've all continued to apply, and I think the important part is if you look at what the Supreme Court did and the amendments act. It said that not only was it that the original definition it had under the ADA was the intent was to have it match the rehabilitation act of 1973, and the courts and started to get away from that so the Congress expressly said we want to get back to that rehabilitation act definition. If you look at the Florida State cases, they continue to say to not just the federal ADA. Again, I think I understand your position. I mean, I, I wanted to know where you both sides seem to be in agreement we shouldn't certify. I get it. I understand that. Are there any other questions. Okay, Mr. I think we have your case. We'll hear from this hard to first address the issue of retaliation. I think the record is replete with evidence that would allow a jury to find that the expulsion of Miss ring was pretextual. For example, it's not the expulsion was pretextual the question is whether the reasons the legitimate non discriminatory reasons, you have evidence that those reasons are pretextual. I do, and you have to rebut the reasons you have to have evidence that all those reasons are in fact false. I do, Your Honor, first of all, come head on. First of all, Samantha ring was chosen to be the chair of the Boca Ciega clubs holiday parade committee in late 2018, just right before she was suspended she planned that event that is a major event for the club. She was handpicked by the Commodore at that time to be the chair. So, she was obviously a good head on and rebut all the legitimate non discriminatory reason that that's only one of my points Your Honor, and that she was obviously in good standing with. Is there any is there any evidence in the record about how that position is chosen or is that just an inference. If you look at the deposition of Commodore Larry Brown, he says that he is the one who chose Miss ring to be the, be the chair of the holiday boat parade which leads me to believe that it's his choice and his discretion, but also like to point out that it was three years, almost three years, short of one month since Samantha ring it had any sort of written reprimand from the Boca Ciega yacht club. Furthermore, she was living on her boat in violation of the rules, and that that's one of the reasons that they stated she was being kicked out. That is their claim. I don't think that they have proven that and she does dispute that she says that she was not in the Boca Ciega yacht clubs basin but she was in Gulfport waters, and, you know, if you look at her deposition she never denies. That's correct. So where's the evidence, where's the evidence that that's not true. Well, she also had a land based address that means she's not living on the boat. But what is living on the boat how many nights do you have to spend on the boat to be living there as opposed to living somewhere else. Well, what about the accusation that she was using the electricity hook up and using the city's electricity without authorization that accusation did not happen until after she had filed a complaint with the Pinellas County Office of Human Rights and gone to the city and complained about being discriminated well regardless of that does she dispute or where in the record. Is there a dispute about whether or not that actually occurred. Well, the deposition of the Commodore Nick Southern admitted that other members have used electricity more than they felt was appropriate, but they weren't accused of stealing. There's also evidence in the record from the fleet fleet captain that Miss ring had not had any violations of in the, in the prior year regarding use of electricity. The question for pretext though isn't whether these things actually happened or not it's whether they were the real reasons for the termination. Right. I mean, that's correct. That's the question that we're asking for pretext, whatever the fact that that there had been no written reprimand of Miss ring for more than three years shows that they are at least strongly, you can infer from that that that's contextual. Also, that's, that's a tough road for you because the opposing counsels right the reasons for the prior expulsions or the, or the prior motions to terminate were based on the same exact conduct that led to this here and so there is a consistent pattern of the, the, the club being concerned about this very issue that would seem to cut against you not for you, I would think. There is no record evidence that the club had been concerned about her living on her boat for the preceding three years before she was expelled. And also, if I could respond to something that that Judge Mark said it's my understanding that outside of the context of retaliate retaliating based on employment. The issue is not but for but whether the protected activity is causally related in any way to the, to the adverse action. And I, my site for that your honor is Farley versus nationwide excited in my brief. Moving on. Mr Hart. If your time is expired. You got five seconds left. If I could summarize the issue before the court is whether bogus Diego yacht club has a constitutionally protected right to discriminate. That's a bold question that they're asking you, if the lower courts ruling is upheld. Okay, see the club can exclude people with service animals. It can similarly discriminate on the basis of race, religion or any protected class, you know, not sure that allowing service animals implicates the Constitution, but, but you may have good arguments why you're going to win anyway. The exemption is based on the freedom of association bogus Diego yacht club has not shown that its ability to achieve its mission would be inhibited by allowing service. The exemption is based on a statute or it's a statutory exemption it certainly has constitutional implications but but but we don't have to decide any constitutional questions to decide whether the statutory exemption applies. That's correct but the basis of the statutory exemption was the freedom of association under the First Amendment. Okay, Mr Hart, I think we understand your case, and we're going to move on. I say we understand your case, we at least understand your case better. This is not an easy case, but we're going to give it our best and thank you both for your help this morning. Thank you.